## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH MAURY, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:02-CV-1492 (DJS) |
| | : | |
| V. | : | |
| | : | |
| COMPUTER SCIENCES CORPORATION, | : | |
|     Defendant. | : | JANUARY 5, 2004 |

### REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, Computer Sciences Corporation ("CSC"), respectfully submits this Reply Brief in Support of its Motion for Summary Judgment. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief") fails to raise any genuine issues of material fact as to either of his two causes of action. With respect to his wrongful termination claim, plaintiff now contends, for the first time in this lawsuit, that the public policy that CSC allegedly violated is a public policy contained in the federal copyright laws as set forth in Title 17 of the United States Code. (Pl.'s Brief at 13-14.) Notably, however, plaintiff still fails to proffer any evidence that CSC selected him for layoff <u>because</u> of his complaints about CSC's alleged use of unlicensed computer software.

Plaintiff has also failed to provide "specific facts," as required by Fed. R. Civ. P. 56, with respect to his claim for violation of Conn. Gen. Stat. § 31-51q. In addition, plaintiff's own

deposition testimony belies his claim that his objections to CSC's alleged "illegal" conduct constituted speech regarding a matter of public concern.  (See Section B, *infra*.)

As explained herein and in defendant's primary brief, there is no genuine issue of material fact that CSC selected plaintiff for layoff not because of his complaints about CSC's alleged use of unlicensed computer software, but because of his poor interpersonal skills and the inappropriate manner in which he communicated with CSC employees and the employees of CSC's customer/client, Carrier Corporation ("Carrier").

### A. **Plaintiff Has Proffered No Evidence That His Layoff Occurred for a Reason That Violates Public Policy.**

Count One of plaintiff's Second Amended Complaint alleges that CSC wrongfully terminated plaintiff's employment by violating "the public policy protecting employees from having to engage in illegal conduct on behalf of employers."  (Compl. ¶ 52 (emphasis added).) Nowhere in his Complaint, or during the discovery process, has plaintiff identified federal copyright law as the basis for his wrongful termination claim.  To the contrary, when asked at his deposition what he meant by the term "illegal", plaintiff testified that he meant CSC was allegedly installing software "without proper licensing."  (Maury Dep. at 92.)[1]  Rather than invoking copyrights (or copyright laws), plaintiff subsequently identified various *license agreements*, between CSC and several software suppliers, that he believed CSC had violated.  (Maury Dep. at

---

[1] Portions of plaintiff's deposition transcript cited herein are attached as Exhibit A.

101-03.) Nevertheless, plaintiff now identifies Title 17 of the United States Code as the basis for his wrongful termination claim. (Pl.'s Br. at 13-14.)

Plaintiff has failed, however, to show that CSC selected him for layoff <u>because</u> of his complaints about CSC's alleged use of unlicensed computer software. While plaintiff baldly asserts that CSC "has admitted that the termination decision was prompted by Plaintiff's efforts to curb unlicensed software copying," (Pl.'s Br. at 13), CSC has consistently denied any such motivation behind the layoff decision. Plaintiff's bald statement is based on testimony by his former supervisor, Michael Bondi, concerning an e-mail that Bondi sent to plaintiff on January 17, 2001. That e-mail, attached as Exhibit B to defendant's primary brief, states:

> "Subject:     your approach
>
> I have received numerous complaints from the third floor about your approach. You need to tone back your questions and interrogation of the customer base. In one case a comment came to me that you try to make certain people feel inferior. In another case you literally scared a VP into not using a certain product she was using with authorization and that you were aware of. Negative views have been echoed on the CSC customer satisfaction survey. You are exceptionally good at your job, but you need to refine your approach. We are the vendor in the customer's environment, we need to work with the customer. We don't reinforce the customer's policy to them. Telling them that they could be liable for fines is unacceptable. CSC's process may not be fully refined at both out [sic] site level or Syracuse, but things are progressing. We are not law breakers or criminals and the customer does not need to hear that.
>
> Something to think about in this gray world (not black and white)."

Bondi's e-mail is clear, both in the "Subject" line and in the text of the message, that Bondi was criticizing not plaintiff's *complaints*, but rather his *approach* in dealing with customers.[2] Plaintiff's suggestion that Bondi's e-mail somehow constitutes an admission "that the termination decision was prompted by Plaintiff's efforts to curb unlicensed software copying," (Pl.'s Br. at 13), is a transparent attempt to distort the facts. Bondi expressly denied the claim that plaintiff's selection for layoff had anything to do with his complaints about alleged use of unlicensed software. (Deposition of Michael Bondi ("Bondi Dep.") at 246.)[3] Indeed, plaintiff's counsel inquired about Bondi's motivation for selecting plaintiff for layoff, and Bondi flatly rejected counsel's suggestion that plaintiff's concerns about unlicensed software installs were really what motivated the layoff decision:

> Q. Well, why was it that you selected Mr. Maury for termination in this RIF?
>
> A. Some of the factors that we discussed earlier. There were conflicts with both the customer and the other employees in the environment.
>
> Q. Some of those conflicts revolve around Mr. Maury's concerns that CSC and/or UTC/Carrier employees were installing software without licenses?
>
> Mr. Sussman: Objection to the form of the question.
>
> A. It was more the other way around. It was the employees and the customer were complaining about Ken's—the way he conducted himself with them.

---

[2] It is well established that employers are free to terminate employees for their lack of interpersonal skills. See, e.g., Vandel v. Standard Motor Prods., Inc., 52 F.Supp.2d 344 (D. Conn. 1999), aff'd, 1999 U.S. App. LEXIS 34237 (2d Cir. 1999).

[3] Portions of Mr. Bondi's deposition transcript cited herein are attached as Exhibit B.

(Bondi Dep. at 228-29.) Thus, the facts belie plaintiff's claim that CSC has "admitted that the termination decision was prompted by Plaintiff's efforts to curb unlicensed software copying." (Pl.'s Br. at 13.)

In the absence of an admission from Bondi that plaintiff's complaints about alleged use of unlicensed computer software motivated the layoff decision, plaintiff's only evidence is the alleged temporal proximity between the time of plaintiff's complaints and the date of his layoff. (Pl.'s Br. at 18; Pl.'s Loc. Rule 56(a)(2) Stmt, ¶ 22.) Courts in this district have specifically held that "[a]bsent any other evidence of retaliatory motive, mere temporal proximity alone is insufficient." Gallo v. Eaton Corp., 122 F. Supp. 2d 293, 304 (D. Conn. 2000); see also Lajuenesse v. A&P, 160 F. Supp. 2d 324 (D. Conn. 2001).

In Clark County School District v. Breeden, 532 U.S. 268 (2001), the United States Supreme Court noted that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close.'" Id. at 273 (citations omitted). Here, plaintiff acknowledges that he began complaining about alleged software licensing violations at least as early as October 2000. (Compl. ¶¶ 25-27.) Plaintiff was not laid off until September 2001. Absent any other evidence of retaliatory motive, and indeed there is none, the passage of eleven months is "simply too remote to

show a causal connection."[4] Gallo, 122 F. Supp. 2d at 304 (nine months is too remote to show causal connection); see also Rinsler v. Sony Pictures Entm't, Inc., 2003 U.S. Dist. LEXIS 14754 (S.D.N.Y. 2003) (six months too temporally remote to support retaliation when there is no direct evidence of retaliatory animus);[5] Cruse v. C&J United States Publ'g, 96 F. Supp. 2d 320 (S.D.N.Y. 2000) (passage of six months refutes any causal link); Cobian v. New York City, 2000 U.S. Dist. LEXIS 17479 (four months insufficient); Booker v. FRB of N.Y., 2003 U.S. Dist. LEXIS 3955 (S.D.N.Y. 2003) (four months proximity would not be enough by itself); Lajuenesse, 160 F. Supp. 2d 324 (two months insufficient); Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990) (no causal connection where three months separated complaint and adverse action).

Plaintiff's reliance on Treglia v. Town of Manilus, 313 F.3d 713 (2d Cir. 2002), and Gayle v. Sheehan, 313 F.3d 677 (2d Cir. 2002), is misplaced. In those cases, the court did not rely on temporal proximity alone in finding sufficient evidence of retaliation to defeat summary judgment. In Treglia, the plaintiff was a police officer who claimed, inter alia, disability discrimination. First, the temporal proximity upon which the court relied was a one month period between the time of plaintiff's complaints of discrimination and subsequent adverse employment action. Treglia, 313 F.3d at 721. Second, the court relied on factors other than mere temporal proximity in

---

[4] In light of plaintiff's admission that he began complaining about alleged software licensing violations at least as early as October 2000, his claim that "there is clear temporal proximity between [his] August 2001 email objecting to illegal conduct and [his] termination," (Pl.'s Br. at 18), is specious.

[5] Copies of all unreported cases cited herein are attached as Exhibit C.

determining that the plaintiff's claims should survive summary judgment, including: (1) the fact that the chief of police twice denied plaintiff a promotion to sergeant over other officers who scored lower than plaintiff on the civil service examination for that position; (2) the fact that, when plaintiff confronted the police chief about the failure to promote, the chief allegedly responded that plaintiff "had always done a good job but that he would not receive a promotion to sergeant 'now or ever' and that now was a 'good time for him to get out of the business,'" (id. at 717); and (3) the undisputed fact that, when the police chief heard about plaintiff's discrimination charges, he told the president of the Police Benefit Association that "if [plaintiff] wants to play hard ball, we can swing the bat back and play hard ball too." Id. at 721-22.

    Gayle is also distinguishable. The plaintiff in that case was a prison inmate who complained about mistreatment of prisoners. In Gayle, unlike this case, the adverse actions taken against the plaintiff (a written misbehavior report followed by an administrative hearing at which he was sentenced to solitary confinement) came just days after his complaint.[6] Gayle, 313 F.3d at 683. Moreover, as in Treglia, the court relied on evidence other than mere temporal proximity in finding sufficient evidence of retaliatory animus to withstand summary judgment. For example, the court noted that testimony at plaintiff's administrative hearing failed to support the charges in

---

[6] Thus, even if the courts in Treglia and Gayle *had* relied exclusively on temporal proximity, the holdings were entirely consistent with Breeden, 532 U.S. at 273, in which the court pointed out that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close.'" Breeden, 532 U.S. at 273 (citations omitted).

the written misbehavior report, and that, indeed, the findings against the plaintiff at that administrative hearing were subsequently administratively reversed. Id. Here, plaintiff relies solely on the eleven-month period between his initial complaints and his September 2001 layoff which, as a matter of law, is insufficient evidence of "temporal proximity" to withstand summary judgment. Gallo, 122 F. Supp. 2d at 304 (nine months is too remote to show causal connection).

Moreover, as explained in defendant's primary brief, plaintiff's *admission* at his deposition that he lacked any evidence of causal connection is particularly telling, and worth repeating here. Plaintiff testified as follows:

> Q. What information do you have to show that CSC terminated your employment because you refused to engage or to make illegal use of unlicensed computer software?
>
> A. Because that was the only complaint that I had with CSC, even my performance evaluation stated that my technical ability was good, that I was very good at my job.
>
> Q. So the reason that you believe that that was—that you were terminated for refusing to make illegal use of unlicensed computer software is because you can't think of any other reason?
>
> A. I would have to say yes.

(Maury Dep. at 228-29.) Moreover, when asked whether he had any facts to indicate that CSC terminated his employment because he refused to make illegal use of unlicensed computer software, plaintiff responded, "No, there's no other reasons that I can think of now." (Id. at 230.)

Absent evidence that plaintiff's layoff occurred because of his complaints about alleged illegal software installations, and in light of plaintiff's admissions that CSC's management not

only encouraged, but insisted on software licensing compliance, (see Maury Dep. at 109-11, 205, 227;  Compl. ¶ 21), plaintiff's wrongful termination claim cannot withstand summary judgment.

    **B.**    **CSC is Entitled to Summary Judgment on Plaintiff's Conn. Gen. Stat. § 31-51q Claim.**

Plaintiff acknowledges that his Conn. Gen. Stat. § 31-51q claim can only survive summary judgment if the speech in question rises to the level of "public concern."  (Pl.'s Br. at 16.)  See, e.g., in Connick v. Myers, 461 U.S. 138, 146 (1983).  See, e.g., Lowe v. Amerigas, Inc., 52 F. Supp.2d 349, 359 (D. Conn. 1999) (holding that plaintiff's speech "must have been on a matter of public concern" to demonstrate violation of Conn. Gen. Stat. §31-51q), aff'd mem., 208 F.3d 203 (2d Cir. 2000).  In determining whether an employee's speech addresses a matter of public concern, the Second Circuit, in a case cited in plaintiff's own brief, has held that "the court should focus on the motive of the speaker…."  Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).

Here, unlike in any of the cases cited by plaintiff's counsel, plaintiff admitted at his deposition that he was not speaking out on a matter of public concern:

    Q.    What prompted you to raise these concerns about alleged improper and illegal conduct?

    A.    My knowledge of software and the IT industry.

    Q.    What was your purpose, though, in going to management to complain?

    A.    My purpose was the fact that we lost money when we did this.  CSC lost money.

    Q.    So you were looking out for CSC?

    A.    That's why I went to work for CSC.

> Q. And so your purpose in going to management was in an effort to protect CSC?
>
> A. Yes. Not only protect CSC, but also protect CSC's clients.
>
> Q. Is there anybody else you were seeking to protect besides CSC and its clients?
>
> …
>
> A. No. That's the only people that were involved.

(Maury Dep. at 241-42.) Consistent with these admissions, prior to his termination, plaintiff did not report any alleged illegalities to anyone outside of CSC. (Maury Dep. at 241.) In sum, plaintiff has not demonstrated that he was attempting to "inform the public" of "actual or potential wrongdoing," nor has he demonstrated that he himself attempted to promote free and open public debate on an issue of public concern and suffered an adverse employment action as a result. Connick v. Myers, 461 U.S. 138, 145, 148 (1983).

In addition to his failure to establish that he was speaking out regarding a matter of public concern, plaintiff has also failed to establish, as he must to prove a violation of Conn. Gen. Stat. § 31-51q, that the speech in question was a "substantial or motivating factor in the employment actions taken" by CSC. Schnabel v. Tyler, 230 Conn. 735, 755 (1994). For the reasons discussed in Section A, *supra*, and in defendant's primary brief, CSC submits that plaintiff has failed to establish any nexus between his so-called "speech" and the layoff decision.

## IV. **CONCLUSION**

For all of the foregoing reasons and those stated in defendant's primary brief, CSC is entitled to summary judgment on both counts of plaintiff's Complaint.

THE DEFENDANT,
COMPUTER SCIENCES
CORPORATION


By:_____
    Albert Zakarian (ct04201)
    Eric L. Sussman (ct19723)
For:  Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    Its Attorneys

## **CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, postage prepaid, to:

Peter B. Prestley, Esq.
Craig Dickinson, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capital Avenue, Suite 201
Hartford, CT  06106

_____
Eric L. Sussman