MAURY vs. COMPUTER SCIENCES CORP.  May 22, 2003

Page 1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF CONNECTICUT

3   - - - - - - - - - - - - - x

4   KENNETH MAURY,                :

5              Plaintiff,  : Civil Action No.

6          vs.              :    3:02CV01492

7   COMPUTER SCIENCES         :        (DJS)

8   CORPORATION,              :

9              Defendant.  :

10  - - - - - - - - - - - - - x

11

12

13            Deposition of GARY CRAKES, taken

14  pursuant to the Federal Rules of Civil

15  Procedure at the law offices of Day, Berry &

16  Howard, CityPlace, Hartford, Connecticut,

17  before Elizabeth A. Zawacki, LSR #00087, a

18  Registered Merit Reporter and Notary Public in

19  and for the State of Connecticut, on Thursday,

20  May 22, 2003, at 9:40 p.m.

21

22

23

24

25

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 2 of 18

MAURY vs. COMPUTER SCIENCES CORP.                    May 22, 2003

Page 6

1    ground rules.  I'll be asking you a series of
2    questions, and I'll need you to provide audible
3    responses so the court reporter can accurately take
4    down everything that we say.  If you don't
5    understand a question, please let me know.  I'll be
6    happy to repeat it or rephrase it or have the court
7    reporter repeat it.
8              If at any time you need to take a break,
9    let me know.  I'll be happy to accommodate you.  I
10   ask if a question is pending, you answer the
11   question before we take a break.  Fair enough?
12        A.   Yes.
13        Q.   When were you retained in connection with
14   this case?
15        A.   If I could consult my file.
16        Q.   Sure.  That's your file in front of you?
17        A.   Yes, it is.  I believe that the letter
18   dated April 9 of 2003 I think was the first written
19   communication.  I may have had a telephone
20   conversation with Kate Demitrus a few days prior to
21   the receipt of these terms.
22        Q.   Who informed you that you were being
23   retained in connection with this case?
24        A.   I believe my initial conversations were
25   with the paralegal, Kate Demitrus.

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 3 of 18

MAURY vs. COMPUTER SCIENCES CORP.                                May 22, 2003

Page 11

```
1      A.    Yes.
2      Q.    Do you know what Mr. Maury's job was at
3  CSC?
4      A.    Just generally that it involved some type
5  of computer services.
6      Q.    Do you know anything more specific than
7  that with respect to Mr. Maury's job?
8      A.    No.
9      Q.    Are you familiar with salaries over the
10 past four or five years in the particular field in
11 which Mr. Maury worked?
12     A.    No, I'm not.
13     Q.    Are you familiar with salaries in the
14 computer field at all?
15     A.    Not specifically, no.
16     Q.    Are you familiar with -- strike that.
17           Do you know anything about job security in
18 that particular field?
19     A.    No.
20     Q.    Do you know anything about Mr. Maury's job
21 history?
22     A.    If I could just consult my file for a
23 moment.  I believe I did have some income tax
24 returns for Mr. Maury.  I don't know if I had any
25 long-term history of his employment experience.  I
```

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 4 of 18
MAURY vs. COMPUTER SCIENCES CORP.                           May 22, 2003

Page 12

1   don't believe that I did, no.
2       Q.    You did not?
3       A.    That's correct.
4       Q.    So you don't know whether prior to his
5   employment with CSC Mr. Maury had ever been laid off
6   from previous employment?
7       A.    I don't know.
8       Q.    You don't know whether he's ever been
9   fired from previous employment?
10      A.    That's correct.
11      Q.    If it turned out that Mr. Maury had been
12  laid off or fired from some previous employer, could
13  that affect your calculation of economic loss?
14      A.    I don't believe so, no.
15      Q.    Couldn't it affect your assumption that
16  Mr. Maury remains employed at CSC for the next 20
17  years?
18      A.    That is an assumption, that that
19  employment would have been maintained.
20      Q.    If you knew that at some point in
21  Mr. Maury's past, whether on one occasion or more
22  than one occasion, he had been fired from previous
23  employers, couldn't that affect the reasonableness
24  of the assumption that Mr. Maury would have
25  continued employment for the next 20 years?

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 5 of 18
MAURY vs. COMPUTER SCIENCES CORP.                              May 22, 2003

Page 13

1  A.  It's an assumption I was requested to
2  make, and my analysis is based on that assumption.
3  Q.  Would you agree with me that the
4  reasonableness of that assumption would be -- that
5  it would be less reasonable to assume that if you
6  learned that Mr. Maury had been terminated from
7  previous employment in the past?
8  A.  I believe it would not have an impact in
9  the sense that I had been requested to make that
10 assumption based upon information concerning the
11 longevity of his employment with Computer Sciences
12 Associates.  I don't know anything else concerning
13 his work history, nor am I qualified to assess the
14 likelihood of maintaining that employment.  It's an
15 assumption I have been requested to make.
16 Q.  How do you know Attorney Prestley?
17 A.  I'm sorry?
18 Q.  How do you know Attorney Prestley?
19 A.  I have performed some appraisals of
20 economic loss for his firm before.  We met for the
21 first time today.
22 Q.  You said you've performed economic loss
23 appraisals for his firm before.  For other attorneys
24 in the firm?
25 A.  Yes, I have.

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 6 of 18
MAURY vs. COMPUTER SCIENCES CORP.                May 22, 2003

Page 17

1   from the last several weeks.
2       A.   Since the date of my report, yes.
3       Q.   Did you do anything to prepare for this
4   deposition?
5       A.   I reviewed my file.
6       Q.   Anything else?
7       A.   I did meet with Attorney Prestley briefly
8   this morning, and basically just provided an outline
9   of my calculations in this matter.
10      Q.   What did you say at that meeting?
11      A.   I indicated what the assumptions were with
12  respect to, for example, the mitigation earnings for
13  Mr. Maury, and we discussed that, and that was the
14  extent of our conversation.
15      Q.   What did you discuss with regard to that?
16      A.   I indicated that I had performed two
17  alternative estimates with respect to alternative
18  earnings.  One was based upon the earnings of a man
19  with an associate's degree, the other estimate was
20  based upon annual gross receipts from his current
21  employment endeavors.
22      Q.   Attorney Prestley say anything with regard
23  to that?
24      A.   No, not really.
25      Q.   Do you remember anything else about the

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 7 of 18

MAURY vs. COMPUTER SCIENCES CORP.                                May 22, 2003

Page 20

```
 1      A.      Yes.  I began providing some assistance to
 2   John Maher in performing appraisals of economic loss
 3   in around 1981, and then we provided a name
 4   associated with our operation, including mine, in
 5   around 1983.
 6      Q.      What is the business of Maher, Crakes &
 7   Associates?
 8      A.      Primarily providing appraisals of economic
 9   loss.
10      Q.      Do you primarily do that in wrongful death
11   cases?
12      A.      Wrongful death, personal injury, some
13   employment cases, and occasionally divorce matters.
14      Q.      When you say some employment cases, is
15   that a less common circumstance than wrongful death
16   and personal injury for you?
17      A.      Yes.
18      Q.      How many times would you say you've
19   performed an economic loss appraisal in an
20   employment termination case?
21      A.      I really don't know.
22      Q.      More than ten?
23      A.      Certainly more than ten, yes, but I don't
24   know the exact number.
25      Q.      Showing you what's been marked as Exhibit
```

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 8 of 18
MAURY vs. COMPUTER SCIENCES CORP.                                May 22, 2003

Page 23

```
1     A.    Yes.
2     Q.    Do you recall the name of the defendant?
3     A.    I think there were many defendants.
4     Q.    Do you recall the names of any of them?
5     A.    No, I don't.  Difficult man.
6     Q.    Have you done other projections of lost
7   wages like the one that you did in this case?
8     A.    I'm not sure I understand the question.
9   Most projections of lost earnings have a component
10  of past and future lost earnings; so, yes, most of
11  my analyses would be similar in scope to the
12  analysis I performed here.
13    Q.    Including -- let's focus on the employment
14  termination claims.  You said you've done a number
15  of those?
16    A.    Yes.
17    Q.    Are you familiar enough with the fact
18  patterns of those cases and this case to testify as
19  to whether the projections of lost wages were based
20  on similar facts?
21              MR. PRESTLEY:  I object to the form
22  of the question.  It's very vague.
23              You can answer.
24    A.    I'm not sure I can answer.  If I could say
25  in general terms, yes.  In specific terms, not
```

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 9 of 18
MAURY vs. COMPUTER SCIENCES CORP.                              May 22, 2003

Page 24

1    necessarily.

2             MR. PRESTLEY:  But in general -- and

3    Eric is very accommodating.  If he asks a question

4    that you can't answer, don't answer, and ask him to

5    rephrase it.  I'm sure he'll make an attempt to ask

6    a question that you can answer.

7        Q.    Absolutely.  That's the instruction I gave

8    you in the beginning.  You said in general terms,

9    yes?

10       A.    Yes.

11       Q.    But in specific terms, not necessarily?

12       A.    Yes.

13       Q.    What do you mean by that?

14       A.    In general terms, in most employment

15   cases, there is an estimate of what would have been

16   earned by the plaintiff versus what the alternative

17   employment in earnings may be, yes.  In terms of the

18   specific type of employment held by Mr. Maury, I

19   don't recall any other cases that I have been

20   involved in with that specific type of occupation

21   where there has been an employment claim.

22       Q.    So is it fair to say you have not done a

23   projection of lost wages for a person in Mr. Maury's

24   field?

25       A.    I don't know that that's the case.  What

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 10 of 18
MAURY vs. COMPUTER SCIENCES CORP.                                May 22, 2003

Page 29

```
 1   Prestley?
 2        A.    Yes, it is.
 3        Q.    At the time that you wrote this letter you
 4   had not yet spoken to Attorney Prestley?
 5        A.    I believe that's true, yes.
 6        Q.    The first sentence says, "The following
 7   report on the economic loss of the above-named is an
 8   objective estimate of the loss in this case measured
 9   as scientifically and accurately as the data
10   permit."
11              Do you see that?
12        A.    Yes, I do.
13        Q.    What do you mean by that?
14        A.    That it's an estimate of loss based upon
15   the information I had been provided with, and I am
16   relying on the accuracy of that information.
17        Q.    So if any of the information that was
18   provided to you were not accurate, that could affect
19   your ultimate calculation of economic loss?
20        A.    Different inputs, different information,
21   would provide a different result.
22        Q.    Is there data that you were lacking that
23   you think would make your estimate more accurate if
24   you had that data?
25        A.    I don't recall anything, no.
```

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 11 of 18
MAURY vs. COMPUTER SCIENCES CORP.                                May 22, 2003

Page 33

```
1    Q.   Of course, you assumed that Mr. Maury
2  would remain employed at CSC for the next 20 years?
3    A.   Yes, I did.
4    Q.   Why did you assume that?
5    A.   The calculation is based upon a component
6  for past loss and for future loss.  My calculation
7  for future loss is for the full work life of
8  Mr. Maury.
9    Q.   Why did you assume employment for the next
10 20 years?
11   A.   Based upon his ability, had he not been
12 terminated, to potentially maintain that employment
13 to age 65.
14   Q.   Do you have any knowledge as to whether
15 Mr. Maury would have been able to remain at CSC for
16 the next 20 years?
17   A.   Again, it's an assumption.
18   Q.   What I'm trying to find out is why you
19 made that assumption, and I think what you testified
20 to earlier was you made that assumption based on
21 Mr. Maury's ability to work in that capacity for the
22 next 20 years; is that correct?
23   A.   Yes.
24   Q.   But do you know anything about Mr. Maury's
25 ability to work in that capacity for the next 20
```

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 12 of 18
MAURY vs. COMPUTER SCIENCES CORP.                                   May 22, 2003

Page 34

1  years?
2      A.    Specifically, no, I do not.  It's an
3  assumption that I have made.
4      Q.    You were asked to make that assumption?
5      A.    Yes.
6      Q.    Other than the fact that you were asked to
7  make the assumption, is there any other reason that
8  you made that assumption?
9      A.    No.
10     Q.    Was it Kate Demitrus that told you to make
11 that assumption?
12     A.    I believe I did discuss this with Kate
13 Demitrus, and her response back to me was that I
14 should calculate the loss of earnings for Mr. Maury
15 to age 65.
16     Q.    So the answer is yes, she informed you
17 that you should assume employment through age 65?
18     A.    Yes.
19     Q.    So you also assumed that CSC would be in
20 existence until Mr. Maury was 65 years of age?
21     A.    Or that he would have the ability to hold
22 some type of comparable employment.
23     Q.    But in terms of calculation of his
24 economic loss with respect to CSC, you're assuming
25 CSC's continued existence until Mr. Maury is at

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 13 of 18
MAURY vs. COMPUTER SCIENCES CORP.                              May 22, 2003

Page 35

1   least age 65; is that correct?

2   A.   Yes; or again, his ability to hold some
3   type of comparable position had this termination not
4   occurred.

5   Q.   When you say comparable position, you mean
6   a comparable position within CSC?

7   A.   Or in another comparable capacity.

8   Q.   For another company?

9   A.   Possibly, yes.

10  Q.   But you'd agree with me that that wouldn't
11  be a loss associated with CSC?

12  A.   Again, I'm not qualified to make an
13  assessment of the employability damages associated
14  with Mr. Maury's ability to continue his career.  If
15  there are elements associated with this matter that
16  affect his employability in other situations, then
17  you've had a loss associated with it.

18  Q.   You also assumed that Mr. Maury would
19  never be laid off in making your calculations?  You
20  assumed he would never be laid off from CSC?

21  A.   Nor have I included any component of
22  fringe benefits for compensation associated with
23  such experiences.

24  Q.   But you assumed that he would never be
25  laid off?

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 14 of 18
MAURY vs. COMPUTER SCIENCES CORP.                                May 22, 2003

Page 36

```
 1      A.    With that condition, yes.
 2      Q.    Well, I understand there's other
 3   assumptions you're not making.  I'm just trying to
 4   clarify.  You're assuming in making your calculation
 5   of lost wages from CSC for the next 20 years that he
 6   would not be laid off during that time period; is
 7   that correct?
 8      A.    Yes; and I am also not including any value
 9   for compensation as a component of fringe benefits
10   associated with such an experience.
11      Q.    You calculated a loss of fringe benefits
12   in connection with this case, have you not?
13      A.    Yes, I have, but not for the types of
14   events that you are identifying.
15      Q.    If he were laid off at some point in the
16   future, how would that affect your economic loss
17   calculation?
18      A.    My calculation of fringe benefits does not
19   include any of the employment-based legally mandated
20   employer contributions to fringe benefits for things
21   such as unemployment compensation, workers'
22   compensation, any type of disability experience.
23   So, yes, I have assumed that he would be continually
24   employed.  If he did have the type of event occur
25   that you identified, there could be compensation
```

Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 15 of 18
MAURY vs. COMPUTER SCIENCES CORP.                     May 22, 2003

Page 37

1   associated with that experience that I have not
2   included.
3       Q.   You also assumed that he wouldn't be fired
4   until he's age 65, correct?
5       A.   Yes, with the same condition that I have
6   just identified.
7       Q.   You assumed that he would be physically
8   and mentally capable of working for CSC in the same
9   capacity until he's age 65?
10      A.   Yes, I have; again, with the same
11  condition that I have just identified.
12      Q.   Do you think that those are reasonable
13  assumptions?
14      A.   With the conditions that I have
15  identified, yes.
16      Q.   Why?
17      A.   Again, we are estimating his capacity to
18  experience earnings over that period of time in the
19  future.  If he did have any type of event that
20  affected his capacity to do so, again, there could
21  be compensation as a component of fringe benefits
22  associated with such an experience.  I have not
23  included any value for those components of fringe
24  benefits.
25      Q.   Do you know how long Mr. Maury was

MAURY vs. COMPUTER SCIENCES CORP.
Case 3:02-cv-01492-PCD   Document 68-2   Filed 11/21/2005   Page 16 of 18
May 22, 2003

Page 38

1    employed at CSC before his layoff?

2    A.    I believe a little over a year.

3    Q.    Based on that, you nevertheless think it's
4    reasonable to assume continued employment for the
5    next 20 years?

6    A.    It's an assumption that I have made, yes.

7    Q.    I'm asking you about what you think about
8    the reasonableness of that assumption. In light of
9    the fact -- if somebody were employed with a certain
10   company for 30 years, and then you assume employment
11   for the next 20, do you think the reasonableness of
12   that assumption is -- do you think that assumption
13   is more reasonable or less reasonable than assuming
14   employment, continued employment, for the next 20
15   years by someone who has been employed by the
16   company for only six months?

17   A.    Again, it's an assumption I have been
18   requested to make. Certainly the duration of one's
19   employment affects potentially the continuation of
20   that employment. It's an assumption I've been
21   requested to make in this matter, and I've done so.

22   Q.    But are you saying you have no opinion as
23   to the reasonableness of that assumption?

24   A.    That's correct.

25   Q.    You also assumed that Mr. Maury would be

Case 3:02-cv-01492-PCD    Document 68-2    Filed 11/21/2005    Page 17 of 18
MAURY vs. COMPUTER SCIENCES CORP.                               May 22, 2003

Page 39

1  continuously employed to age 65 by CSC, correct?

2      A.    That he would have a work life to age 65,

3  yes.

4      Q.    Why did you pick 65?

5      A.    65 is the age that I have used for the

6  calculation of his earnings ability.  It is the most

7  typical age of retirement.  Currently it's the age

8  of attainment of maximum Social Security benefit for

9  someone of Mr. Maury's age.  Actually, that

10 attainment of maximum Social Security benefit will

11 be closer to age 66 than it is 65, based upon Social

12 Security reforms in the 1980s.  In addition to that,

13 I have looked at work life and median years to

14 retirement tables which suggest something in the

15 neighborhood of between age 63 and age 64.  Given

16 that trends seem to indicate an increase in work

17 life, again, and given all of those factors, I felt

18 65 was a reasonable age to use.

19     Q.    Do you have any understanding as to when

20 Mr. Maury intended to retire?

21     A.    No.

22     Q.    Now, you've prepared, you testified, two

23 alternative damages calculations in this case; is

24 that right?

25     A.    Yes.

```
1       Q.      If we could turn to Exhibit 1 of your
2    report, in the last two-thirds of that page, are
3    those the two alternative calculations?
4       A.      For the future time period, that's
5    correct.
6       Q.      In the right-hand column where it says,
7    "With future alternative earnings based on annual
8    earnings of $28,333," do you see that?
9       A.      Yes, I do.
10      Q.      You assumed that Mr. Maury would never in
11   the next 20 years find a job making over $28,333 a
12   year?
13      A.      In discounted terms, that's correct.
14      Q.      I understand that you made that
15   assumption.  My question is:  Why did you make that
16   assumption?
17      A.      The calculations that I made, as we have
18   identified, have been on two alternative bases, two
19   alternative assumptions.  One is based upon the
20   earnings of, a generic estimate of the earnings of a
21   male with the level of education of Mr. Maury.  The
22   second alternative is based upon his current
23   employment endeavors.  He is self-employed.  His
24   gross receipts, not his net income, but his gross
25   receipts on an annualized basis for this year, at
```